IN THE MATTER OF THE ESTATE OF CHARLES K. KNIGHT, DECEASED.—
48 S. W. (2d) 71.

Springfield Court of Appeals. March 7, 1932.

*John H. Keith* and *W. H. Stumbaugh* for appellants.

*Edgar & Banta* for respondents.

COX, P. J.—This case originated in the probate court of Iron county. From an order of distribution of the money in the hands of the administrator of the estate of Charles K. Knight, deceased, certain parties appealed to the circuit court where the case was tried upon an agreed statement of facts and that court entered judgment by which it was determined that James S. Jones was entitled to

one-third and Anna Lunt to two-thirds of the estate as distributees and found that the other claimants, to-wit, Lue Howell and Georgia Hickman, were not entitled to any portion of the estate. The latter two appealed to this court.

Charles K. Knight was a soldier in the World War and took out a policy of war risk insurance of $10,000 and named his mother, May Mink, and a half-brother, Paul M. East, as beneficiaries. Said Charles K. Knight died single and intestate April 14, 1918, leaving as his sole blood relatives his mother, May Mink, and his maternal half-brother, Paul M. East, and his aunts, Anna Lunt and Lue Howell and a half-aunt, Georgia Hickman, said Georgia Hickman being a half-sister of May Mink, Anna Lunt and Lue Howell. After the death of Charles K. Knight, the insured soldier, monthly installments of $57.50 due under the policy were paid to the mother, May Mink, and half-brother, Paul M. East, the beneficiaries named in the policy, until the death of May Mink and after her death to Paul M. East alone until his death in September, 1929, May Mink, the mother of the insured, intermarried with one James S. Jones in April, 1921, and continued to live with him as his wife until her death in 1923. Paul M. East, the last beneficiary to whom installments were paid under the policy died testate and by his last will and testament, which was duly probated, he left all the unpaid installments or whatever sum might be coming to him under this policy to his aunt, Anna Lunt. Said May Mink had only one child, to-wit, Paul M. East. She had no other children, so that at her death the only parties entitled to distribution of her estate were her son, Paul M. East, and her husband, James S. Jones. The commuted amount due under the policy amounting to $4801.82 was paid by the Government to Thomas N. Marr, public administrator of Iron county, Missouri, having in charge the estate of Charles K. Knight. The controversy as to who was entitled to this money as distributees then arose. The trial court found that James S. Jones was entitled to one-third as the surviving husband of May Mink, the mother of said Charles K. Knight, and that Anna Lunt was entitled to two-thirds under the will of Paul M. East, and that the other aunts of Charles K. Knight, to-wit, Lue Howell and Georgia Hickman, should take nothing.

There is no controversy as to the right of the Government to pay the commuted value of the unpaid installments to the administrator of the estate of the deceased soldier for such is the plain provision of the Federal Statute. Neither is there any question that under the law, since the amendment of the Federal Statute in 1924, this payment to the administrator conveys to him title to the money paid and he holds it for distribution under the law of the State in which the deceased soldier had his domicile at the time of his death. [Condon v. Mallen, 30 Fed. (2d) 995.]

There are two questions for our determination here. First; Did the beneficiary, Paul M. East, have a vested interest in the unpaid installments of the insurance policy so that he could dispose of them by will as he attempted to do. On this question we are convinced that he did not have such an interest and could not dispose of it by will. [Cassarella v. U. S., 271 Fed. 486.]

The War Insurance Act, sec. 5147, p. 1226, U. S. Revised Code of 1925, sec. 303, expressly provides that when the named beneficiaries die or become disqualified before all the monthly installments have been paid, the commuted value of the future installments shall be paid to the estate of the deceased soldier, and this without limitation. That means that when paid, this money, for the purpose of distribution, becomes the property of the estate and must be distributed under the law of the State just as any other personal property belonging to the deceased at the time of his death is to be distributed and that cuts out the power of any beneficiary to control it and require it to be distributed in any other way.

The other question to be determined is how shall we ascertain who are the persons to whom distribution must be made? Distribution of personal property must be made under the provisions of the State statute. Under our statute it goes to the heirs of the deceased but the question raised in this case is as to the time at which the heirs are to be determined. Shall it go to the persons who were his heirs at the time of his death or shall it go to the persons who were his heirs at the time of the death of the beneficiary in the policy which left a commuted value of unpaid installments to be paid to the estate of the deceased. On this question the authorities do not all agree. In New York, Iowa, Wisconsin and the Federal Circuit Court of Appeals of the District of Columbia, it has been held that the heirs must be determined as of the date of the death of the insured. [In re Ryan's Estate, 222 N. Y. S. 253; In re Pivonska's Estate (Ia.), 211 N. W. 246; In re Singer's Estate (Wis.), 213 N. W. 479; Condon v. Mallen, 30 Fed. (2d) 995.]

In Kentucky it has been held that the heirs are to be ascertained as of the date the money became payable to the estate. [Sutton's Executor v. Barr's Admr., 219 Ky. 543, 293 S. W. 1075.]

The weight of authority seems to be in favor of the holding that the heirs for purposes of distribution are to be determined as of the date of the death of the soldier and we so hold in this case. That means that we are to determine the distributees in this case just as we would if this money had been paid to the estate of Charles K. Knight immediately after his death and then distribution had been delayed until final settlement of that estate in the probate court of Iron county which was made at the February term, 1931.

In our statute of descent and distribution, we find in section 306, Revised Statutes 1929, that property of the deceased goes first to the children and their descendants. Second, if there be no children or their descendants, then to the father and mother and brothers and sisters in equal parts. In section 309, Revised Statutes 1929, it is provided that if some of the collateral heirs are of the whole blood and others of the half-blood, those of half blood take only one-half as much as those of the whole blood. The deceased soldier died without issue and left as his only heirs his mother, May Mink, a collateral heir of the whole blood, and Paul M. East, a half brother and hence a collateral heir of the half blood. Had distribution of this money been made at that time the mother would have been entitled to two-thirds of it and her son, Paul M. East to one-third. To determine to whom this money should now be distributed, we must trace it through these parties to the time of the final settlement of the estate in February, 1931, just as we would if distribution had been made immediately after the death of the soldier and the money then paid to them. Tracing the two-thirds of this fund which would have been paid to May Mink, the mother, at that time, we find that she subsequently married James S. Jones, and when she died she left as her only heirs and distributees her son, Paul M. East, and her husband, James S. Jones. Under section 323, Revised Statutes 1929, the husband became entitled to a share equal to that of a child and since there was but one child, he and that child, Paul M. East, would share equally in the distribution of the two-thirds of this money which must be traced through the mother of the soldier. Had distribution of the estate been made immediately upon the death of the mother, the son would have received one-third as a collateral heir of Charles K. Knight, the deceased soldier, and one-half of the two-thirds that passed through his mother, making a total of two-thirds of the entire amount of the money, and James S. Jones would have received one-third, being one-half of what his deceased wife would have received if the money had been distributed in her lifetime. Thus matters stood until the death of the son, Paul M. East, and also at the time of the final settlement of the estate of Charles K. Knight in February, 1931. From this it will be seen that James S. Jones was at that time entitled to one-third the money as the court found, but as to the other two-thirds, which we hold could not be disposed of by the will of Paul M. East, it must go to the heirs of said Paul M. East in the same manner as it would have gone had he made no will. The heirs of Paul M. East at his death were the two aunts of the whole blood, Anna Lunt and Lue Howell, and one aunt of the half blood, Georgia Hickman. Georgia Hickman, being a collateral heir of the half

blood could only take one-half as much as could the aunts of the whole blood. The correct distribution of this money will be to distribute one-third of it to James S. Jones and the other two-thirds should be divided into five parts and Anna Lunt and Lue Howell each be awarded two-fifths of that sum and Georgia Hickman, one-fifth.

The judgment will be reversed and the cause remanded with direction to set aside the judgment entered and enter judgment awarding to James S. Jones one-third of the entire amount to be distributed, to Anna Lunt and Lue Howell, each, four-fifteenths of the total sum and to Georgia Hickman two-fifteenths thereof. *Bailey* and *Smith, JJ.*, concur.